HENRY SCOTT, Plaintiff in Error, *v.* WILLIAM WHITLOW, Defendant in Error.

### ERROR TO PEORIA.

A sold a lot of railroad ties to B, who again sold them to C, who confused them with other ties laid upon a road bed. A notified C that the ties belonged to him, and C thereupon refused to pay B for them. B then sued C, and obtained a judgment against him for the value of the ties. A then filed his bill, alleging fraud, etc., in B, and obtained a perpetual injunction against C, restraining him from paying the judgment in favor of B, and commanding the sheriff to collect it for the benefit of A: *Held,* That C should have made this defense at law in the action brought by B, and that it was not a proper exercise of chancery powers to interfere with the collection of a judgment, fairly obtained as between the parties to it.

A court of equity is not always bound to act, even where it has authority.

THE defendant below, on the 6th day of April, 1857, filed his bill for injunction in the clerk's office of the Circuit Court of Peoria county, alleging that, about the month of August, 1856, he was the owner of about five thousand railroad ties, which were lying on the bank of the Illinois river, in Schuyler county ; that he had previously purchased the same of the rightful owners, and same had been delivered to him at the place aforesaid.

That three writs of attachment were sued out from before a justice of the peace, of Schuyler county, against one William Pound, and levied upon said ties, upon which attachments some of the ties were subsequently sold, to satisfy the judgments obtained in the attachment suits ; that the ties were purchased by William Gregory, one of the plaintiffs in one of the attachment suits ; that said Gregory soon after sold the ties to plaintiff, who took the ties to Peoria, and sold them to William H. Cruger, Charles A. Secor and James Hurry ; that Cruger, Secor & Hurry put them with other ties, and they could not then be identified ; that defendant notified Cruger, Secor & Hurry not

to pay plaintiff for the ties; that plaintiff brought suit against Cruger, Secor & Hurry, and recovered judgment for $385.50 and costs, in the County Court of Peoria county, and that execution was issued upon this judgment against Cruger, Secor & Hurry, to make the amount of the judgment.

The bill alleges that the judgments before the justice of the peace were void for want of sufficient affidavit bond and writ; that Gregory knew, at the time of the sale, that the ties were defendant's, and that Scott knew, at the time he purchased the same of Gregory, that the ties were defendant's; that Scott has left the State of Illinois, and that complainant does not know of any property belonging to plaintiff to make the amount of the value of the ties. The bill also charges that the plaintiff was guilty of fraud in purchasing and selling the ties, and that the constable who made the sale is irresponsible.

The bill prays for injunction against plaintiff, to prevent his collecting his judgment, and also against Cruger, Secor & Hurry, to prevent their paying the judgment, and against the sheriff of Peoria county, enjoining him from collecting the judgment.

An injunction was granted, as prayed for in the bill, and the cause was heard before POWELL, Judge.

The plaintiff demurred to the bill, and the cause was heard in vacation, and a decree rendered, perpetually enjoining the plaintiff from collecting the judgment, and decreeing that the sheriff proceed to collect the same from Cruger, Secor & Hurry, and pay over the same to the defendant Whitlow, and that thereupon the said Cruger, Secor & Hurry be discharged from said judgment.

WEAD & WILLIAMSON, for Plaintiff in Error.

H. B. HOPKINS, for Defendant in Error.

CATON, C. J. The railroad ties in controversy were seized by virtue of certain writs of attachment against Pound, and as his property, were sold to Gregory, one of the plaintiffs in attachment, who sold them to Scott, and he transported them to Peoria, and sold them to Cruger, Secor & Co., who mixed them with other ties, and laid them on their road. Whitlow notified Cruger, Secor & Co. that the ties belonged to him, and they thereupon refused to pay Scott for them. Scott then sued them for the price of the ties, and obtained a judgment against them. Then Whitlow filed his bill, alleging these facts, and that the ties were all this time his, and that Scott well knew this when he bought them of Gregory; that the whole proceed-

ing was fraudulent from beginning to end, and that Scott is irresponsible, and prays an injunction, etc. On the final hearing, the court perpetually enjoined Scott from collecting his judgment, but directed the sheriff to collect it, and pay the money over to the complainant.

We think this was carrying the principles of equitable relief quite too far. Whitlow has really nothing to do with that judgment of Scott against Cruger, Secor & Co. He discharged his duty when he notified them that the ties were his, and not Scott's, and put them in a position to defend themselves against Scott's action for the price of the ties. That they either neglected to do, or got beaten in the controversy, if they attempted it. As between the parties to that action, the question is forever settled that the sale was *bona fide* and conferred a good title. That is now *res adjudicata.* The amount of that judgment certainly belongs to Scott, both in law and equity, if the defendants then knew of the defense, and failed to make it, or attempted to make it, and were beaten. Whatever defense there was to that action, was strictly of a legal character, and then was the time to insist upon it. It does not concern Whitlow whether or not Cruger, Secor & Co. pay this judgment to Scott. The payment of the judgment to Scott would, in no degree, impair their liability to Whitlow, if any has existed. This is manifestly a bill got up for the benefit of Cruger, Secor & Co., to give them the benefit of another trial upon the questions which were and should have been tried in that action. The bill abounds in allegations of fraud, but, after all, there is no allegation that the judgment was obtained by fraud. While fraud is one of the broadest grounds of equity jurisdiction, it by no means follows that it will take cognizance of and inquire into every allegation of fraud. We have before remarked, in another case, that a court of equity is not always bound to act where it has authority to act; that although its decrees might not be void for want of jurisdiction, yet it is not always bound to exercise its jurisdiction when its aid is invoked. In this case, although the court had power to make the decree it did, we do not think it a proper exercise of its chancery powers to interfere with the collection of a judgment, fairly obtained as between the parties to it.

The decree must be reversed and the bill dismissed.

*Decree reversed.*