ELIZABETH MILLER et al. Appellees, vs. JOSEPH ROWAN, Appellant.

Opinion filed October 25, 1911.

1. JURISDICTION—*erroneous judgment is not void if court had jurisdiction of the subject matter.* Jurisdiction of the subject matter is the power to adjudge concerning the general question which is involved, and if a bill in chancery states a case belonging to a general class over which the authority of the court extends, jurisdiction attaches, and the judgment, however erroneous, is not void, but is binding upon the parties until reversed or annulled in a direct proceeding and is not open to collateral attack.

2. SAME—*distinction between want of jurisdiction and erroneous exercise of jurisdiction.* Want of jurisdiction of the subject matter is to be distinguished from an erroneous exercise of jurisdiction, as in the former case the want of jurisdiction renders the judgment void and open to collateral attack, whereas an erroneous exercise of jurisdiction merely renders the judgment open to reversal on appeal or writ of error.

3. SAME—*courts of equity have power to construe will and declare titles of litigants.* Courts of equity have power to construe wills and declare the titles of litigants, but such power ought not to be exercised where nothing but legal titles are involved, as in such case there is an adequate remedy at law; but the mere fact the court takes jurisdiction where legal titles, only, are involved, does not render its judgment void and open to collateral attack.

4. SAME—*the objection that there is an adequate remedy at law may be waived by complainant as well as defendant.* The rule that a failure by the defendant to raise the objection that the remedy sought by the bill belongs properly to the domain of the law courts is a waiver of the objection is applicable to a complainant in the suit as well as to a defendant.

5. SAME—*objection that court had no jurisdiction to construe will may be waived.* An objection that a court of equity had no jurisdiction to entertain a bill to construe a will because no trust was involved is waived in the Supreme Court where it was not made below.

6. SAME—*equity having jurisdiction to grant equitable relief may declare legal titles.* A court of equity having acquired jurisdiction to grant equitable relief will retain the case to do complete justice between the parties although it becomes necessary to declare legal titles and enforce purely legal remedies.

7. RES JUDICATA—*when decree construing will is res judicata.*
A decree expunging certain false words of description from a will
and declaring what titles the devisees take under the will is bind-
ing upon the parties until reversed in a direct proceeding, and is
*res judicata* as between the parties in a subsequent suit to parti-
tion the land.

VICKERS, J., dissenting.

APPEAL from the Circuit Court of Jackson county; the
Hon. WILLIAM N. BUTLER, Judge, presiding.

ISAAC K. LEVY, and CHARLES E. FEIRICH, for appel-
lant.

JAMES H. MARTIN, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the
court:

Upon a bill for partition filed by the appellees against
the appellant, Joseph Rowan, and others, the circuit court
of Jackson county entered a decree finding that the lands
descended to the heirs-at-law of Alexander Rowan and Mc-
Farland Rowan, deceased, and awarded partition as prayed
for. The bill alleged that Alexander Rowan and McFar-
land Rowan owned the lands as tenants in common, each
owning an undivided one-half; that Alexander Rowan died
intestate on February 15, 1906, leaving no widow or child
or descendant; that McFarland Rowan died in October,
1909, intestate, leaving no widow, child or descendant, and
that the lands passed by inheritance to their collateral heirs.
The appellant, Joseph Rowan, and others, answered the bill,
alleging that the lands, except a forty-acre tract, became the
property of said Joseph Rowan by virtue of the last will and
testament of Robert Rowan, deceased, and denying that the
heirs-at-law of Alexander Rowan and McFarland Rowan
had inherited the lands. The bill merely alleged owner-
ship of the lands by the heirs-at-law, without setting up

anything further, but on the hearing the record of a prior suit in equity respecting the title to the lands was offered and received in evidence without objection, by which the fee simple title to the tracts of land in dispute was found by the circuit court of said Jackson county to be in said Alexander Rowan and McFarland Rowan. The court having found against the claim of Joseph Rowan and entered a decree in accordance with that finding, the defendants jointly and severally prayed and were allowed an appeal to this court, and the appeal was perfected by Joseph Rowan alone.

Robert Rowan owned the south-west quarter of section 29, in township 10, south, range 1, west, and a tract of one and one-half acres in section 32. He died on January 17, 1879, leaving a last will and testament, by which he gave his widow, Ellen Rowan, a life estate in all of his real estate, but in describing the quarter section the words "south-west quarter" were duplicated through a mistake of the scrivener, and the tract was described as the south-west quarter of the south-west quarter. The testator intended to devise the north half of the quarter section to his sons Joseph Rowan and Samuel Rowan subject to the life estate of the widow, and to devise the south half, together with the acre and a half in section 32, to his two sons Alexander Rowan and McFarland Rowan, but in each of the three paragraphs of the will making the devises the same mistake was made and "south-west quarter" was written twice, so as to describe only forty acres of the quarter section. Substantially the same provision or condition was annexed to each devise to the sons, and the claim of Joseph was based on this provision following the devise to Alexander Rowan and McFarland Rowan: "And in case of the death of the said Alexander or McPharlin Rowan said described lands shall revert to Joseph and Samuel Rowan. In case they should die leaving widow or widows to the widow while she remains their widow or widows then to their heirs if any living." Joseph Rowan claimed title under this provi-

sion by way of executory devise.    In 1881 Ellen Rowan,
the widow, Joseph Rowan, the appellant, and Alexander
Rowan and McFarland Rowan, filed a bill to the March
term of the Jackson circuit court alleging the mistake in the
description of the south-west quarter and praying the court
to correct the same by expunging the second and superfluous
"south-west quarter" found in the description of the land;
that the complainants might "have the legal as well as the
equitable title to said lands vested in them according to the
true intent, meaning and design of said testator," and for
other and further relief, as the nature of the case might
require.    All of the persons interested or entitled to partici-
pate in the distribution of the estate of Robert Rowan
were made parties and served with process.    Some grand-
children were minors and answered the bill by their guard-
ian *ad litem.*    Certain adult defendants were defaulted and
the cause was referred to a master in chancery, who took
the evidence and reported to the court recommending a
decree in accordance with the prayer of the bill.    At said
March term, 1881, a decree was entered in that cause by
the court finding that a mistake had been made in the de-
scription of the south-west quarter of section 29 by the
person who wrote the will, by writing "south-west quarter"
more than once, and adjudging and decreeing that Alexan-
der Rowan and McFarland Rowan by virtue of the will took
and had a fee simple title, as tenants in common, to the
south half of the south-west quarter of said section and the
one acre and a half in section 32, subject to the life estate
of the widow, and perpetually enjoining all the other par-
ties from setting up any claim or asserting any right, title
or interest whatever in or to any part of said lands as the
heirs of Robert Rowan, deceased.

It is contended by the appellees that said decree is con-
clusive upon appellant as to the construction of the will of
Robert Rowan, and also that, independent of the question
of *res judicata,* the appellant, Joseph Rowan, one of the

complainants, having procured the court to give such construction to the will in 1881, and having never questioned it since, is now estopped to question such construction. If the circuit court had jurisdiction to construe the will, the decree construing it, which invested Alexander Rowan and McFarland Rowan with a fee simple title to the lands in dispute, is conclusive upon all the parties to that suit and those claiming under them,—and that is the question to be determined.

A judgment or decree is not binding upon anyone unless the court rendering the same had jurisdiction of the parties and the subject matter of the cause. The court did have jurisdiction of the parties, and the appellant, who is disputing the binding effect of the decree, was one of the complainants. Jurisdiction of the subject matter is the power to adjudge concerning the general question involved, and if a bill states a case belonging to a general class over which the authority of the court extends, the jurisdiction attaches and no error committed by the court can render the judgment void. If the court has jurisdiction, it is altogether immaterial, when the judgment is collaterally called in question, how grossly irregular or manifestly erroneous its proceedings may have been. The judgment cannot be regarded as a nullity, and cannot, therefore, be collaterally impeached. Such a judgment is binding on the parties and on every other court unless reversed or annulled in a direct proceeding and is not open to collateral attack. If there is a total want of jurisdiction in a court its proceedings are an absolute nullity and confer no right and afford no protection but will be pronounced void when collaterally drawn in question. *Buckmaster* v. *Carlin,* 3 Scam. 104; *Swiggart* v. *Harber,* 4 id. 364; *People* v. *Seelye,* 146 Ill. 189; *Clark* v. *People,* 146 id. 348; *O'Brien* v. *People,* 216 id. 354; *People* v. *Talmadge,* 194 id. 67.

While jurisdiction, in its proper sense, means authority to hear and decide a cause, it is common to speak of juris-

diction in equity or the jurisdiction of a court of equity as not relating to the power of the court to hear and determine a cause, but as to whether it ought to assume the jurisdiction and hear and decide the cause. In *Scott* v. *Whitlow,* 20 Ill. 310, it was said that although the decree of a court might not be void for want of jurisdiction and the court had power to make the decree it did, it was not a proper exercise of its chancery powers. And in *Curtiss* v. *Brown,* 29 Ill. 201, the court called attention to the confusion arising from the use of the word "jurisdiction" as applied to courts of equity. The court said: "We often find the jurisdiction denied where the power exists but ought not to be exercised, and in this sense is the word 'jurisdiction' usually used when applied to courts of chancery. Where there is want of power the decree is void collaterally, but where there is said to be a want of jurisdiction, merely, it is only meant that it would be erroneous to exercise the power and the decree would be reversed on appeal. It means a want of equity and not a want of power." Mr. Pomeroy, in his work on Equity Jurisprudence, (vol. 1, sec. 129,) points out the fact that the term "equity jurisdiction" is used in contradistinction to jurisdiction in general and to common law jurisdiction in particular; that the term "jurisdiction," in the sense of power residing in the court, may be applied to courts of equity as well as to any other tribunals; that with this signification an equity court has no jurisdiction to try a criminal cause; that this strict meaning is not always given to the term "equity jurisdiction" as it is ordinarily used, and that when ordinarily speaking of the equity jurisdiction we do not thereby refer to the general power inherent in a court to decide a controversy at all. In a note he says that the true meaning of "jurisdiction" is so often misunderstood and the word is so often misapplied that he quotes a passage from an opinion in *Hunt* v. *Hunt,* 72 N. Y. 217, as a clear and convincing explanation of the matter. The author of the chapter on jurisdiction in the Encyclopedia of

Pleading and Practice, after giving a correct definition of the word "jurisdiction," calls attention to the fact that there is perhaps no word in legal terminology so frequently used as the word "jurisdiction," so capable of use in a general or vague sense and used so often by men learned in the law without due regard to precision in its application, and he points out the distinction between an error of judgment and the usurpation of power, the former being reversible by an appellate court while the latter is an absolute nullity. Mr. Justice Mulkey, in *Richards* v. *Lake Shore and Michigan Southern Railway Co.* 124 Ill. 516, commenting on the statement in Story's work on Equity Pleading that a bill must state a case within the jurisdiction of a court of equity, said that the author was doubtless speaking of jurisdiction in the strict sense in which it is understood in courts of law and as applicable to a certain class of cases in equity which under no circumstances are ever cognizable in a court of equity, such as would be a bill to recover damages for slander or for an assault and battery, which are wholly foreign to equity jurisdiction. That is not the case here. Courts of equity have power to construe wills and declare the titles of litigants under them, and the subject is not foreign to the jurisdiction of such courts. The power, however, ought not to be exercised except under certain conditions, and it is error to assume jurisdiction where there is an adequate remedy at law. A court of equity will not entertain a bill for the construction of a will which only deals with or disposes of purely legal estates and which makes no attempt to create any trust relation with respect to property devised. (*Strubher* v. *Belsey*, 79 Ill. 307; *Harrison* v. *Owsley*, 172 id. 629; *Longwith* v. *Riggs*, 123 id. 258; *Minkler* v. *Simons*, 172 id. 323; *Mansfield* v. *Mansfield*, 203 id. 92; *Fletcher* v. *Root*, 240 id. 429.) The jurisdiction is an incident of the general jurisdiction of courts of equity over the subject of trusts, which are beyond the power of courts of law, and a decree merely finding legal

titles would be erroneous and subject to reversal by an appellate tribunal. But it does not follow that such a decree would be void and subject to collateral attack. The objection that the remedy sought belongs properly to the domain of the law courts, which furnish a complete and adequate remedy, must ordinarily be raised by the defendant at the commencement of the suit or else it will be regarded as waived, and if the question is not raised in the proceeding the decree will not even be erroneous. This was decided in *Parsons* v. *Millar,* 189 Ill. 107, where a bill for the construction of a will was filed and it was contended in this court that the circuit court had no jurisdiction because no trust was involved. We held that the jurisdiction in that regard not having been challenged in the circuit court the question could not be raised in this court. The appellant was one of the complainants in the suit in which the fee simple title was declared to be in Alexander Rowan and McFarland Rowan, and the rule applicable to a defendant, it seems, ought to be applied to him.

There is another doctrine of equity that, where there is any ground of equity jurisdiction, a court of equity having acquired jurisdiction to grant equitable relief will retain the case to do complete justice between the parties, although it becomes necessary to declare legal titles and enforce purely legal remedies. (*City of Peoria* v. *Johnston,* 56 Ill. 45; *Rawson* v. *Fox,* 65 id. 200; *Pool* v. *Docker,* 92 id. 501; *County of Cook* v. *Davis,* 143 id. 151.) In any view of the case the decree was not void and subject to collateral attack as a mere nullity.

The decree is affirmed.                  *Decree affirmed.*

Mr. JUSTICE VICKERS, dissenting:

I do not concur in the opinion agreed to by the majority of the court, and I shall state the reasons for my dissent therefrom as concisely as the nature of the questions

involved will permit. While the binding effect of the decree of 1881 is not dependent upon its being free from error, I am of the opinion that such a decree is not only void for want of jurisdiction of the court to render it, but that the effect of upholding it is to deprive appellants of the title to real estate devised to them under the will of Robert Rowan. In order to show that the decree defeats the will of the testator and takes his real estate from his children and their descendants and distributes it as intestate property, it is only necessary to examine the provisions of the will in the light of well established rules of law relating to real property.

Robert Rowan died on January 17, 1879, leaving surviving him his widow, Ellen Rowan, who died in September, 1895. He also left five sons. Alexander, McFarland, Samuel and Joseph Rowan are mentioned as devisees in his will. By the second clause of his will Robert Rowan gave his wife, Ellen Rowan, a life estate in all of the real estate he might own at his death, but in attempting to describe the south-west quarter of section 29, being 160 acres which the testator owned, the will in this clause, through a mistake of the scrivener, described only the south-west quarter of the south-west quarter of section 29 and one and one-half acres in section 32. The third clause of the will is as follows:

"*Third*—At the death of my wife, Ellen Rowan I give and devise unto my sons Joseph and Samuel Rowan their heirs and assigns the north half of the south-west quarter of the south-west quarter of section 29, in township 10, south of range one west Jackson county, containing eighty acres more or less. And in case of the death of the said Joseph or Samuel Rowan the said described land shall revert to Alexander and McPharlin Rowan. In case they should die and leave a widow or widows and heirs to her will while their widow then to their heirs. Samuel Rowan is to have the west half and Joseph Rowan the east half

of said tract of land. To be divided giving each half of the cleared land and each half of the timber, with the appurtenances thereunto belonging."

The next clause, which ·is also designated as "Third" but which is, in fact, the fourth clause of the will, is the clause which disposes of the particular lands that are in controversy in this suit and on the construction of which the rights of the parties depend, and reads, as follows:

"*Third*—At the death of my wife, Ellen Rowan, I give and devise unto my two sons Alexander and McPharlin Rowan their heirs and assigns the south half of the southwest quarter of the south-west quarter of section 29 and one acre and a half of the north-east fourth of the north-west quarter of section thirty-two all in township 10, south, range one west in Jackson county, Illinois, containing 81½ acres and a half more or less. And in case of the death of the said Alexander or McPharlin Rowan the said described land shall revert to Joseph and Samuel Rowan. In case they should die leaving widow or widows to the widow, while she remains their widow or widows then to their heirs if any living, with all the appurtenances thereunto belonging or in anywise appertaining."

It will be noted that the same mistake in the description of the premises occurs in the third and fourth clauses that was made by the scrivener in the second clause. Robert Rowan owned the south-west quarter of section 29, and he clearly attempted to dispose of the 160 acres by his will, but the scrivener wrote "south-west quarter" once too often in each clause of the will.

The most serious difference between the parties relates to the construction to be given to the third (fourth) clause of the will of Robert Rowan. Appellant's contention is, that under this clause Alexander and McFarland Rowan took a base or determinable fee, subject to an executory devise to Joseph and Samuel Rowan, or the survivor of them, in case Alexander and McFarland died leaving no

widow or child surviving them, and that since both of them died under the circumstances named, and, by the death of Samuel, Joseph is the only survivor of the four brothers, he is entitled, under the will, to the whole of the premises. On the other hand, appellees contend that under a proper construction of said clause the time of death of the first devisees under the circumstances named in said clause refers to death during the lifetime of the testator, and since both Alexander and McFarland survived their father, their title became a fee simple absolute, which, when they died, passed to their heirs by descent.

Considering the second and fourth clauses of the will together, it is perfectly plain that the testator intended to give his wife, Ellen Rowan, a life estate in the 161½ acres of land which he owned. The testator owned the southwest quarter of section 29 and one and one-half acres adjoining, in the corner of section 32, on which was located his homestead. He had five sons. James, who was named as executor of the will, had received an advancement from his father and is not given anything under the will. It is also clear that the testator intended to devise the remainder, after the life estate of the widow, to four of his sons, giving to Samuel and Joseph the north half of the southwest quarter of section 29 and to Alexander and McFarland the south half of said quarter and the one and one-half acres in section 32 which adjoins said south half, thus giving 80 acres to Joseph and Samuel and 81½ acres to the other two sons. Following the language which is intended to make effective the foregoing devise in the clause which disposes of the south half of said quarter section and the homestead, the following words are inserted: "and in case of the death of the said Alexander or McPharlin Rowan the said described land shall revert to Joseph and Samuel Rowan." This sentence is followed by a period, and if read alone and disconnected from what follows, the rule of construction announced in *O'Mahoney* v. *Burdett,*

12 Moak, 22, and approved by this court in *Fifer* v. *Allen,*
228 Ill. 507, would apply, from which the conclusion would
result that the time of death referred to was death during
the lifetime of the testator.   The rule of those cases is,
where there is a devise *simpliciter* to one person, and if he
should die, to another, the devise is construed upon the
theory that the testator must have had some contingency in
view, and since the death of the first devisee is a certain
and not a contingent event, the testator must have contem-
plated death within some particular period of time, and to
prevent a lapse the rule has been established that the life
of the testator covered the period during which such death
must occur, in order to give the devise over effect.   But to
apply the foregoing rule to the clause of the will here in-
volved requires us to reject as meaningless the balance of
said clause wherein it is provided, "in case they should die
leaving widow or widows to the widow while she remains
their widow or widows then to their heirs if any living,"
etc., which is forbidden by the rule established by many
decisions, which requires the court to so construe the will
as to give effect and meaning to every word and clause
thereof when such construction is possible.   In my opinion
the testator intended that after the life estate of his widow
expired Alexander and McFarland Rowan should come in-
to possession of the lands devised, and upon the death of
either or both without leaving a widow or children, the
interest of such as might die under the conditions named
would pass, under the will, to Joseph and Samuel Rowan
as an executory devise.

An executory devise is defined by Blackstone to be
"such a disposition of lands by will that thereby no es-
tate vests at the death of the devisor but only on some fu-
ture contingency."   This definition has been criticised by
Mr. Fearne as being broad enough to embrace contingent
remainders created by wills, which the law distinguishes
from executory devises in several respects.   (2 Washburn

on Real Prop. 737.) It does not appear to be necessary for the purpose of determining the question now before us to discuss the different conceptions of executory devises that have found expression in the works of authors upon real property, for the reason that the will before us creates an executory devise under all of the definitions of those terms that we have been able to find, among which are several cases decided by this court. Fearne, in his work on Contingent Remainders, on page 399, divides executory devises into three kinds, two of which relate to real property and the third to personal estates, only. The first class, relative to real estate, is where the devisor parts with the whole fee simple but upon some contingency qualifies that disposition and limits an estate on the happening of such contingency, and the author illustrates his meaning as follows: "So where a testator devises lands to his wife for life, remainder to C, his second son, in fee, provided if D, his third son, within three months after the wife's death, pays £500 to C, his executors, etc., then he devises the land to D and his heirs, this was an executory devise to D." (Fearne on Contingent Remainders, 399.) Washburn, in his work on Real Property, adopts the same classification, and in volume 2, on page 740, says: "The first of these [executory devises] embraces cases where a fee simple, for instance, is devised to one but is determined upon some future event and the estate thereupon to go over to another," and he illustrates the principle in the following manner: "An instance illustrative of this principle would be a devise to a mother for life and after her death to the testator's brother in fee, provided that if the testator's wife, then *enceinte,* was delivered of a son then the land should remain in fee to him. A son having been born, took the estate as an executory devise." And by a further example: "As where a devise is to A and his heirs, but in case he died within age then to go to B and his heirs, B's interest is an executory devise."

The principle of these authorities has been recognized and applied by this court from the early case of *Ackless* v. *Seekright,* Breese, 76, down to the present time. In the case above cited, on page 78, it is said: "There is no doc-trine better settled than that a fee may be limited after a fee, and this happens, says Justice Blackstone in his second volume of Commentaries, (p. 172,) 'when a devisor devises his whole estate in fee but limits a remainder thereon to commence on a future contingency, as, if a man devises land to A and his heirs but if he dies before the age of twenty-one then to B and his heirs, his remainder, though void in a deed, is good by way of executory devise.' "

In the case of *Friedman* v. *Steiner,* 107 Ill. 125, the will gave all the rest and residue of the estate, real, per-sonal and mixed, of which the testator died seized, unto the testator's wife and "unto her heirs and assigns forever, to the total exclusion of any and all person or persons whatsoever," to which was .added a proviso, to the effect that if the wife should die intestate and without leaving her surviving lawful issue, then in such event all the rest and residue of the estate was to be converted into money and paid over to other persons designated in the will. This court held that the widow took a determinable fee, which might be defeated by her death under the conditions named, and that the devise over created an executory devise.

There are many other cases to be found in our Re-ports where the same principle has been applied, but it is not necessary to review them all, especially since in the case of *Fifer* v. *Allen, supra,* we had occasion to review a large number of the cases on this question, and a re-examination at this time would be merely a repetition of what was said in that case.

My conclusion is, that the clause of the will under con-sideration vested a determinable fee in Alexander and Mc-Farland Rowan, with a devise over, by way of executory devise, in case they died leaving no widow or children, to

Samuel and Joseph, and since both of said devisees died under the conditions named in the will, the executory devise became effective.

The estate created by an executory devise is such an interest as will pass by descent, but it descends to those persons who are the heirs of the executory devisee at the time the event happens which determines the prior estate. The happening of the condition which ends the prior estate marks the actual beginning of the latter, and those who at that time are the heirs of the deceased executory devisee take the estate. (*DeWolff* v. *Middleton,* 18 R. I. 810; 31 Atl. Rep. 271; *Goodright* v. *Searle,* 2 Wils. 29; *Cain* v. *Fearne,* 7 Jur. 567; *Kean's Lessee* v. *Roe,* 2 Har. 103; Fearne on Contingent Remainders, 560.) In Fearne on Contingent Remainders, 560, it is said: "And in another late case of an executory devise of real estate, where the testator devised lands to his son, G., his heirs and assigns forever, but if he happened to die under the age of twenty-one years, leaving no issue, then he devised the lands to his [the testator's] mother, P., in fee. After the decease of the testator his mother died in the lifetime of G., who afterwards died under age and without issue, and it was held that by virtue of the executory devise to P. the lands vested in her heir-at-law upon the happenings of the contingency, viz., upon the decease of G. under age, without issue, and that this interest, whilst it was contingent and before the event happened, did not so attach in G., who was heir-at-law of P., upon her decease, as to carry it, on his death, to his heir-at-law, who was not heir-at-law to P., but that it vested in that person who was heir-at-law of P. [the first purchaser] at the time the contingency happened."

Upon the death of Alexander Rowan leaving no widow or children, in 1906, his one-half undivided interest in the premises vested in the persons who were at that date the heirs of Samuel Rowan, the other half in Joseph, and upon

the death of McFarland Rowan under the conditions named in 1909, one-half of his interest passed to the persons who at that date were the heirs of Samuel and the other half to Joseph. In determining the exact interest of Joseph in these premises it will be necessary to add to the share which he takes under the will whatever share he may be entitled to as heir of his deceased brothers. In my consideration of this will I have treated the word "heirs," where it is used in the clause referring to the death of Alexander and McFarland "leaving heirs," as the equivalent of "issue" or "children," which is undoubtedly the sense in which that term is employed in the clause of the will.

There is nothing that is said in *Fifer* v. *Allen, supra,* which conflicts with the views herein expressed. In that case the executory devisee filed a bill to enjoin waste committed by the owner of the determinable fee, and for a decree permitting the complainant to participate in the distribution of money arising from the condemnation of a portion of the premises as a railroad right of way, and it was held that before the condition happened upon which the estate was limited, the executory devise had no present existing interest which a court of equity could protect under the facts stated in that bill. The question whether the interest or estate of an executory devisee was devisable or transmissible by descent upon the death of the devisee before the condition happened was not involved nor discussed in the case, and nothing that was there said has any reference to such question. Under the rule established by all of the authorities which I have been able to find, an executory devise of the class to which the one now before us belongs is such an estate in lands as upon the death of such devisee before the condition happens upon which it is limited to take effect, passes to the persons who are heirs of the devisee when the condition happens. What the rule would be in respect to executory devises of other classes is not involved here and has not been considered.

To recapitulate my conclusions on this branch of the case, they may be re-stated as follows: (1) Subject to the life estate of the widow, Alexander and McFarland Rowan took a determinable fee in the premises in controversy as tenants in common; (2) in case either of said devisees died at any time leaving no widow or issue, the estate of the one so dying immediately terminated, and the title passed, by way of executory devise, to Joseph and Samuel as tenants in common, and not as joint tenants; (3) Samuel died before either of his brothers, and his share of the estate passed by descent to the persons who were his heirs on the dates when the estates of the primary devisees terminated; (4) to find the interest of Joseph in the premises it will be necessary to add to the share which he takes under the will whatever he may be entitled to as heir of his brothers.

The appellees insist, and the majority opinion sustains their contention, that the decree of the court below finding that Alexander Rowan and McFarland Rowan died seized in fee simple absolute of the premises in controversy and that the same passed by descent to their heirs was proper and should be affirmed, regardless of the construction that is given to the will of Robert Rowan. This contention is based on the following facts: At the March term, 1881, of the Jackson county circuit court, which was about two years after Robert Rowan died, Ellen Rowan, his widow, and Alexander, Joseph and McFarland, his sons and devisees, filed a bill in chancery for the purpose of correcting the mistake in the will in the 'description of the lands devised. The bill alleged the ownership by the testator of the 161½ acres and his intention to devise said lands, and set out the mistake of the scrivener that has already been pointed out above. The prayer of the bill was, that Ellen Rowan be decreed to have and take under said will a life estate in the whole of said premises, and that Joseph and Samuel be decreed to be the owners of the north half

of the south-west quarter of section 29 subject to the life
estate of the widow, and that Alexander and McFarland
Rowan be decreed to be entitled under said will to the
south half of the south-west quarter of said section 29 and
the one and one-half acres in section 32, or, in the alterna-
tive, that the erroneous "south-west quarter" be expunged
from said will and that the same be corrected according to
the true intent and meaning of said testator. All of the
persons who were entitled to participate in the distribution
of the testator's estate were made parties to said bill and
were properly served with process. Certain grandchildren
of the testator, who were minors, answered the bill by their
guardian *ad litem*. The adult defendants were defaulted
and the cause was referred to a master in chancery, who
took the evidence and reported to the court, recommending
a decree in accordance with the prayer of the bill. At said
March term a decree was entered in accordance with the
prayer of the bill, finding that a mistake had been made in
the description of the premises by the writer of the will,
and that the intention of the testator was to devise "in fee
simple to Alexander Rowan and McFarland Rowan the
premises in controversy, and also finding that by virtue of
the said will Alexander and McFarland Rowan took a fee
simple title, as tenants in common, in the 81½ acres of
land that are involved in this suit, and that Joseph and
Samuel took a like title to the other 80 acres, all of which
was subject to the life estate of the widow, and perpetually
enjoining all of the other parties from asserting any right,
title or claim to any part of said land as the heirs of Rob-
ert Rowan, deceased.

This decree is not set up in the pleadings by either
party to this suit, but was introduced in evidence, together
with all of the proceedings anterior thereto, without objec-
tion, and its effect in the case at bar has been ably and ex-
tensively argued in the briefs of counsel for both parties.
The majority opinion holds that this decree is *res judicata*

and conclusive upon appellant as to the construction of the will of Robert Rowan, and that, independently of the question of *res judicata,* complainant Joseph Rowan having procured the court to give such construction to said will, he is now estopped to question the correctness of such construction. Appellant's contention on this question is, that the bill was filed for the purpose of correcting a clerical mistake in the description of the property devised, and that the court had no jurisdiction to construe the will after the same had been corrected, and that anything in said decree purporting to construe said will is *coram non judice* and is binding upon no one, and I think this contention is correct.

The decree of 1881 is in this proceeding collaterally called in question, hence only jurisdictional questions can be considered. It is conceded that the court rendering the decree had jurisdiction of the persons who were interested in the subject matter of the action, but whether there was jurisdiction of the subject matter presents a question of some difficulty. I am not aware of a single case in this jurisdiction where a bill in chancery has been filed and sustained by this court for the reformation of a will, but in other jurisdictions many courts have recognized the jurisdiction of equity to correct mistakes in wills where both the mistake and the correction thereof are apparent from an inspection of the will itself. Pomeroy, in his work on Equity Jurisprudence, (sec. 871,) recognizes the jurisdiction within the limits stated, and cites numerous cases in support of the text. In my consideration of this question I will assume that a court of equity in this State has jurisdiction, in a proper case, to correct a mistake in a will, and that the bill filed in the Jackson county circuit court was properly filed for the purpose of invoking the exercise of that jurisdiction, but the court in its decree went beyond the mere correction of the description of the property devised and attempted to determine the proper construction of the

will as corrected, and it is this latter adjudication that is directly involved here.

It is fundamental that a judgment or decree is not binding upon anyone unless the court rendering the same had jurisdiction of the parties and the subject matter of the cause. If the decree in question is void for any reason, it is because the court had no jurisdiction over the subject of the construction to be given to the will. Jurisdiction of the subject matter is the power to adjudge concerning the general question involved, and is not dependent upon the ultimate existence of a good cause of action in the particular case before the court. (Brown on Jurisdiction, sec. 3.) It is the power to act and adjudicate concerning the class of cases to which the proceeding before the court belongs. (*Lange* v. *Benedict,* 73 N. Y. 27; *People* v. *Baker,* 76 id. 73.) The general jurisdiction of the subject matter must be conferred by the law. Consent of parties cannot confer jurisdiction of the subject matter. (*Bradley* v. *Fisher,* 13 Wall. 351.) In addition to the general jurisdiction, which must exist by virtue of the law, special jurisdiction of the subject matter in the particular cause must be brought before the court by proper pleading. Where the general jurisdiction of the subject matter is wanting because there is no law under which the court may act in the class of cases to which the proceeding belongs, no act of the parties, by pleading or otherwise, can supply such defect. It follows from these general principles, that if a court or a tribunal pronounces a judgment 'it has no jurisdiction to render or which is outside of the issues made and before the court for determination, then such judgment in excess of the power conferred is void as to such excess. (Brown on Jurisdiction, sec. 3; *St. Louis and Sandoval Coal Co.* v. *Sandoval Coal Co.* 111 Ill. 32.) Did the court have any jurisdiction to construe the will in question under the bill filed to correct a mistake therein?

The jurisdiction of courts of equity to entertain bills for the construction of wills exists only as an incident of the general jurisdiction of those courts over the subject of trusts. A court of equity will never entertain a bill for the interpretation or construction of a will which only deals with or disposes of purely legal estates and which makes no attempt to create any trust relation with respect to the property devised. (Pomeroy's Eq. sec. 1156; *Strubher v. Belsey,* 79 Ill. 307.) In the *Belsey case* a bill was filed to contest the last will and testament of Joseph Belsey on the ground that the instrument was not his will, with the prayer that if the will was sustained a construction might be given to it. The proceeding failed so far as the contest of the will was concerned, but the court below gave a construction to said will. The executor sued out a writ of error from this court. The will in that case only disposed of legal estates and there was no sort of trust created thereby. In discussing the question presented, this court, on page 308, said: "What jurisdiction had the court to give any construction to the will is the first inquiry that presents itself. Where no trust is created, the law, as we understand it, is that neither the executor, nor the heir or the devisee who claims only a legal title in the estate, will be permitted to come into a court of equity for the purpose of obtaining a judicial construction of the provisions of the will. Where only purely legal titles are involved and no other relief is asked, equity will not assume jurisdiction to declare such legal titles but will remit the parties to their remedies at law. (*Whitman v. Fisher,* 74 Ill. 147; *Bowers v. Smith,* 10 Paige, 133; *Onderdonk v. Mott,* 43 Barb. 106.) In *Bowers v. Smith* the chancellor remarked he 'was not aware of any case in which an heir-at-law of a testator or a devisee who claims a mere legal estate in the real property, where there was no trust, has been allowed to come into a court of equity for the mere purpose of obtaining a judicial construction of the provisions of the will.'" And

in the same case, on page 309, it was further said: "No
trust had been reposed in the executors in relation to the
lands to be by them executed in which they need the advice
and assistance of the chancellor. Complainant has sought
the wrong forum. As we have seen, a court of chancery
has no jurisdiction to declare, by construction of the will,
that the legal title to the property, either to the whole or
any part of it, is in him. That is purely a legal question,
and is cognizable only in the common law courts."

The rule announced in the case above cited has been
steadily adhered to by this court in a long line of subse-
quent cases. (*Longwith* v. *Riggs,* 123 Ill. 258; *Minkler*
v. *Simons,* 172 id. 323; *Harrison* v. *Owsley,* 172 id. 629;
*Chapman* v. *Cheney,* 191 id. 574; *Mansfield* v. *Mansfield,*
203 id. 92.) In the case last above cited, on page 98, it
was said: "As an original proposition, we also think the
court below was without jurisdiction to entertain the bill,
its only object being to have the circuit court, and by the
terms of the contract between the complainant and Blakely
this court, settle the legal title between complainant and his
children. (*Strubher* v. *Belsey, supra; Harrison* v. *Ows-
ley, supra.*) Nor is it true that by failing to raise this
question in the court below it has been waived. Consent
can never give jurisdiction of the subject matter."

The case of *Windsor* v. *McVeigh,* 93 U. S. 274, is an
authority directly in point, and I take the liberty of quot-
ing from the opinion of Mr. Justice Field in that case the
following, which seems to me to expose the error into
which the majority of the court have fallen in the case at
bar: "The doctrine invoked by counsel, that where a court
has once acquired jurisdiction it has a right to decide every
question which arises in the cause, and its judgment, how-
ever erroneous, cannot be collaterally assailed, is undoubt-
edly correct as a general proposition, but, like all general
propositions, is subject to many qualifications in its appli-
cation. All courts, even the highest, are more or less lim-

ited in their jurisdiction. They are limited to particular classes of actions, such as civil or criminal; or to particular modes of administering relief, such as legal or equitable; or to transactions of a special character, such as arise on navigable waters, or relate to the testamentary disposition of estates, or to the use of particular process in the enforcement of their judgments. (*Norton* v. *Meador,* Circuit Court for California.) Though the court may possess jurisdiction of a cause, of the subject matter and of the parties, it is still limited in its modes of procedure and in the extent and character of its judgments. It must act judicially in all things, and cannot then transcend the power conferred by the law. If, for instance, the action be upon a money demand, the court, notwithstanding its complete jurisdiction over the subject and parties, has no power to pass judgment of imprisonment in the penitentiary upon the defendant. If the action be for a libel or personal tort, the court cannot order in the case a specific performance of a contract. If the action be for the possession of real property, the court is powerless to admit in the case the probate of a will. Instances of this kind show that the general doctrine stated by counsel is subject to many qualifications. The judgments mentioned, given in the cases supposed, would not be merely erroneous,—they would be absolutely void, because the court, in rendering them, would transcend the limits of its authority in those cases. So a departure from established modes of procedure will often render the judgment void. Thus, the sentence of a person charged with felony, upon conviction by the court without the intervention of a jury, would be invalid for any purpose. The decree of a court of equity upon oral allegations, without written pleadings, would be an idle act, of no force beyond that of an advisory proceeding of the chancellor. And the reason is, that the courts are not authorized to exert their power in that way. The doctrine stated by counsel is only correct when the

court proceeds, after acquiring jurisdiction of the cause, according to the established modes governing the class to which the case belongs, and does not transcend, in the extent or character of its judgment, the law which is applicable to it."

The case of *Windsor* v. *McVeigh* has been cited and the doctrine therein announced approved by this court in *Maloney* v. *Dewey,* 127 Ill. 395. In that case, this court, speaking by Mr. Justice Scholfield, said, on page 402: "This bill attacks collaterally the validity of a decree of the circuit court of the United States. It alleges, for reasons hereafter to be noticed, that such decree is void, and therefore claims the right of those representing the makers of the trust deed to redeem from it, just as if that decree had never been rendered. The general rule is, that where it is once made to appear that a court has jurisdiction both of the subject matter and of the parties, the judgment or decree which it pronounces must be held conclusive and binding upon the parties thereto and their privies, notwithstanding the court may have proceeded irregularly or erred in its application of the law in the case before it. (Cooley's Const. Lim.—1st ed.—408, *et seq.*) There are cases which seem to be exceptional to this rule, but which, perhaps, are not when rightly considered, where the court, although having jurisdiction of the person, and jurisdiction to adjudicate, when properly brought before it, upon the subject matter, renders a judgment not authorized by law in that class of cases under any possible proofs,—as, for instance, in a common law case; a judgment without the verdict of a jury, there appearing to have been no waiver by the parties in interest of the right to have a jury; a judgment punishing a party by imprisonment in the penitentiary under an indictment for a riot and a verdict of guilty thereunder. In such cases it may, perhaps, in a technical sense, accurately enough, be said that the court has no jurisdiction of the subject matter of the particular

judgment. But whether these cases fall strictly within the general rule or form exceptions to it can be of but little importance, in a practical point of view, so long as the grounds on which they rest are understood and kept in mind. They are not instances of mere misapplication of law to particular facts or erroneous interpretation of rules in particular cases, but they are attempts to exercise an authority which has no existence, in the particular case, under any possible state of proofs.—See *Windsor* v. *Mc-Veigh,* 93 U. S. 274; *Lloyd* v. *Malone, 23* Ill. 43."

It would serve no good purpose to multiply citations upon this point. The rules seem to be well established that a decree or judgment rendered by a court which it could have no power to render under any possible state of pleadings or proof is utterly void, notwithstanding the court may have the parties before it and a subject matter. It is necessary, in order to render the decree valid, that the court should have jurisdiction to render a judgment in respect to the particular subject matter upon which it adjudicates. If this be lacking the judgment is void and open to collateral attack,—and this, in my opinion, is the class into which the decree of the Jackson county circuit court of 1881 logically and legally falls.

The will that was before the court in the proceeding to correct a mistake therein only disposes of legal titles. There was an entire absence of any element of trust in it. Under the rule established by the authorities above cited, and of many others that might be found, a court of equity had no jurisdiction to construe this will, and the decree of the circuit court of Jackson county, in so far as it attempted to determine and establish, by construction, the meaning of this will, is binding upon no one.

The majority opinion holds that even though this decree was void for want of jurisdiction, since it was rendered upon a bill filed by appellant, Joseph Rowan, he is estopped from asserting its invalidity. This rule would be applicable

to any error that a court might commit at the instance of a party where the court had jurisdiction, but it does not apply where there is a total want of jurisdiction. This argument is disposed of by the authorities, which hold that consent of parties cannot confer jurisdiction over the subject matter. There is no element of estoppel *in pais,* since the parties all claim as heirs of the devisor.