Carlo RAIMONDO, Petitioner-Appellant,

v.

Michael BELLETIRE, Acting Director, Illinois Department of Mental Health and Development Disabilities, and Robert Mackie, Superintendent, Elgin Mental Health Center, Respondents-Appellees.

No. 85–1991.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 21, 1986.

Decided April 21, 1986.

Rehearing Denied May 13, 1986.

Thomas M. Hefferon, Chicago, Ill., for petitioner-appellant.

Mark L. Rotert, Asst. Atty. Gen., Chicago, Ill., for respondents-appellees.

Before BAUER, WOOD, and EASTERBROOK, Circuit Judges.

BAUER, Circuit Judge.

Carlo Raimondo appeals the denial of his petition for writ of habeas corpus. He alleges that certain amendments to the Illinois statutes governing commitment of persons found not guilty by reason of insanity violate the constitutional guarantee against *ex post facto* punishment, deny him due process of law, and violate the equal protection clause. We affirm.

### I.

In December 1974, Raimondo was acquitted by reason of insanity of rape and robbery by the Circuit Court of Cook County, Illinois. In accordance with the Uniform Corrections Code ("UCC"), ILL.REV.STAT. ch. 38, par. 1005–2–4 (1975), the court found that Raimondo had not recovered from his insanity and ordered him hospitalized for treatment. One year later, Raimondo was released from his criminal confinement as an insanity acquittee and then rehospitalized as a civil patient under the Mental Health Code of 1967. ILL.REV.STAT. ch. 91½ (1977). Raimondo has remained in the custody of the Illinois Department of Mental Health and Development Disabilities ever since.

Two Illinois statutes governing the confinement of persons found not guilty by reason of insanity ("NGRIs") have been amended since Raimondo's hospitalization.

The Unified Code of Corrections, under which Raimondo was initially acquitted and then hospitalized, was amended in 1977. The original UCC limited hospitalization of an NGRI to "an initial period not to exceed 12 months." ILL.REV.STAT. ch. 38, par. 1005–2–4 (1975). The amended version changes this maximum hospitalization period to "the maximum length of time that the defendant would have been required to serve, less credit for good behavior, before becoming eligible for parole had he been convicted of and received the maximum sentence for the most serious crime for which he has been committed...." ILL. REV.STAT. ch. 38, par. 1005–2–4(b) (1979). In 1979, the Mental Health Code of 1967 was repealed and replaced by the Mental Health and Developmental Disabilities Code ("MHDDC"). ILL.REV.STAT. ch. 91½, par. 1–100 *et seq.* (1979). The MHDDC limits the length of civil commitments to 60 or 180 day periods. *Id.* at par. 3–813. Under the previous Mental Health Code, the length of civil commitment periods had been indefinite.

Raimondo, having been committed under the old UCC and the MHC, challenged the application to him of the amended UCC and the MHDDC. He filed a petition in the Circuit Court of Cook County, Illinois for writ of habeas corpus demanding that he be released from the state hospital because he was not lawfully hospitalized under the MHDDC (no new commitment petition had been filed and no hearing held since passage of the MHDDC), and was not lawfully hospitalized under the amended UCC (he had already been confined longer than the maximum period authorized). The Circuit Court found that the new UCC and MHDDC were properly applicable to Raimondo, determined that Raimondo had not yet been confined longer than the maximum allowed by the amended UCC, and computed that maximum period as expiring November 12, 1986, at which time Raimondo would have to be released or civilly committed under the MHDDC.

Raimondo appealed the Circuit Court's holding to the Illinois Appellate Court.

The Appellate Court reversed the Circuit Court's determination that Raimondo could be lawfully held under the newly amended UCC. *Raimondo v. Pavkovic*, 107 Ill. App.3d 226, 231–33, 63 Ill.Dec. 63, 437 N.E.2d 712 (1982). The Appellate Court reasoned that because Raimondo had been civilly committed before the UCC amendments, he could not be brought under the amended UCC as a criminally confined NGRI. *Id.* at 231, 63 Ill.Dec. 63, 437 N.E.2d 712. The court stated that such treatment would violate the *ex post facto* clauses of the constitutions of Illinois and the United States. *Id.* at 232, 63 Ill.Dec. 63, 437 N.E.2d 712. The court concluded Raimondo should be treated as any other civilly committed patient under the provisions of the MHDDC. Applying the MHDDC to Raimondo, the court determined that § 3–200 of that act establishes that civil patients who were once NGRIs may only be released as provided in the amended UCC. *Id.* at 231, 233, 63 Ill.Dec. 63, 437 N.E.2d 712. Thus, although Raimondo's confinement and release are not by statutory authority of the new UCC, the MHDDC applies the confinement and release procedures found in the UCC to patients like Raimondo who were once criminally held as NGRIs and are now civilly committed.[1]

Raimondo petitioned the United States District Court for the Northern District of Illinois, Eastern Division for a writ of habeas corpus. He alleged that application to him of the procedures for confinement and release found in the amended UCC violates the *ex post facto*, due process, and equal protection clauses of the United States Constitution. The District Court denied the writ on cross-motions for summary judgment, and Raimondo filed this timely appeal.

## II.

On appeal, Raimondo renews the arguments he made in the District Court. He alleges that application to him of the procedures for confinement and release found in the amended UCC violates the *ex post facto*, due process, and equal protection clauses of the Constitution. We disagree.

## A.

■ To prevail on his *ex post facto* claim, Raimondo must show that the change in his rights is substantive and not merely procedural. *Dobbert v. Florida*, 432 U.S. 282, 293, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977). The *ex post facto* clause was "intended to secure substantial personal rights against arbitrary and oppressive legislation, and not to limit the legislative control of remedies and modes of procedure which do not affect matters of substance." *Id.* (citations omitted). An examination of Raimondo's rights before and after passage of the MHDDC shows that the changes introduced by that act were procedural only and thus do not implicate the *ex post facto* clause.[2]

---

1. Both parties have argued this case under the assumption that Illinois law requires the State to apply to Raimondo the same release procedures it would apply to a criminal committee under the UCC, that is, the procedures applicable to an NGRI institutionalized at a time that he might have been imprisoned had he been convicted. Although there is some *dicta* supporting this interpretation, *Raimondo v. Pavkovic*, 107 Ill.App.3d 226, 233, 63 Ill.Dec. 63, 437 N.E.2d 712 (1982), we note that the court in *Pavkovic* held that "the only provisions of the amended UCC relevant here are those which pertain to the methods through which a discharge from civil commitment which follows a criminal commitment can be procured." *Id.* at 233, 63 Ill.Dec. 63, 437 N.E.2d 712. No Illinois court has yet decided whether the relevant pro-

vision of the UCC for these purposes is, as both parties have assumed, § 1005–2–4(d–g) which details the release procedures for current NGRIs, or is § 1005–2–4(b) which states that "the admission, detention, treatment or habilitation, transfer, review proceedings, and discharge of the defendant after [an order of involuntary admission] shall be under the Mental Health and Development Disabilities Code." The parties have not presented this question for our review, and we, therefore, need not resolve it.

2. The parties have not argued, *Raimondo v. Belletire*, No. 83 C 5410, mem. op. at 8 (N.D.Ill. Oct. 30, 1984), and we therefore do not address, the question of whether change in the conditions of Raimondo's confinement is immune

Before passage of the MHDDC, Raimondo's rights to release as a civil patient, formerly an NGRI, were governed by the MHC of 1967. Under the MHC there were three ways by which such a patient could be released from hospitalization. First, he could petition an Illinois trial court for discharge if he had a physician's certificate indicating that he no longer needed hospitalization. ILL.REV.STAT. ch. 91½, par. 10–1 (1977). The court was required to hold a hearing on this petition with an opportunity for the petitioner to request a jury. ILL. REV.STAT. ch. 91½, par. 10–3 (1977). If the court found the petitioner no longer needed hospitalization, it entered the appropriate order releasing her or him; if the court found continued hospitalization necessary, it entered a recommitment order, and thereafter the petitioner could not repetition for release under § 10–1 without leave of court. ILL.REV.STAT. ch. 91½, par. 10–3 (1977). Second, a patient under the MHC always had his right to writ of habeas corpus in state court. ILL.REV.STAT. ch. 91½, par. 10–6 (1977). Third, the superintendent of the hospital in which a patient was confined could release a patient any time the superintendent determined hospitalization was no longer necessary. ILL. REV.STAT. ch. 91½, par. 10–4 (1977). If the released patient had been committed under court order, as in the case of an NGRI, the superintendent was required to notify the court that had entered the commitment order of the patient's release, and that court was required to indicate on the former patient's file that he had been released. *Id.* The court could, but was not required to, accept any recommendation by the superintendent that the former patient be restored to full legal competence. *Id.*

As interpreted by the Illinois courts, *Raimondo v. Pavkovic,* 107 Ill.App.3d 226, 63 Ill.Dec. 63, 437 N.E.2d 712 (1982), after

passage of the MHDDC, Raimondo and all civil patients who were once NGRIs became subject to the conditions of confinement and release found at § 5–2–4 of the UCC. ILL.REV.STAT. ch. 91½, par. 1005–2–4 (1979). These provisions retain the three methods of release found in the MHC, but in slightly modified form. First, a petitioner still has the right to petition an Illinois trial court for release. *Id.* at 1005–2–4(e). Now, however, a petitioner need not have a physician's certificate and may re-petition the court an unlimited number of times as long as it is at least 60 days between petitions. *Id.* Second, a former NGRI under the MHDDC still has his right to petition for writ of habeas corpus in state court. *Id.* at 1005–2–4(k). Finally, a patient may still be released at any time by the superintendent of the institution in which he is being confined upon that superintendent's determination that hospitalization is no longer necessary. *Id.* at 1005–2–4(d)(2). The superintendent must still notify the court that originally confined the patient, but must now also notify the State's Attorney in the county in which the commitment proceeding took place. *Id.* The superintendent may then release the patient unless the court or State's Attorney requests a hearing. *Id.* If a hearing is requested, the State bears the burden of proving by clear and convincing evidence that the patient is in need of continued hospitalization. *Id.* at 1005–2–4(g). The court, of course, must enter the appropriate order for release or continued confinement at the conclusion of the hearing.

■ The only change in these provisions that Raimondo attacks as violative of the *ex post facto* clause is the empowering of the court and State's Attorney to require a hearing to review a superintendent's decision to release a patient.[3] Raimondo cites

---

from *ex post facto* analysis because that confinement is not penal in nature. *See Jones v. United States,* 463 U.S. 354, 368–70, 103 S.Ct. 3043, 3051–52, 77 L.Ed.2d 694 (1983).

**3.** Raimondo does also argue that he lost one other right by enactment of the MHDDC. A provision in the MHC of 1967 requires the su-

perintendent to periodically examine the mental condition of all patients, record the results of his examination in the patient's file, and send notice of the patient's condition and reason for continued confinement to the patient, his attorney, his nearest relatives, and other designated persons. ILL.REV.STAT. ch. 91½, par. 10–2 (1977). Raimondo argues that since the MHDDC lacks

no case to support his position that adding the chance for additional discretionary review is the type of procedural change that is so far-reaching that it amounts to a change in substantive rights. He presents no argument that it is similar to other procedural changes that have been found to affect substantial rights. In short, Raimondo has done no more than identify a change in procedure and assume that any change violates the *ex post facto* clause.

While we agree that this additional chance for the State to attempt to deny release may work to the disadvantage of some committed persons, we find the increased hardship to be negligible for several reasons and we thus find the change to be procedural rather than substantive. First, the review of the superintendent's decision in court is discretionary rather than automatic. The opportunity for release is only restricted in those cases in which the state actually elects to challenge the superintendent's decision. Second, the statute requires the State to show by clear and convincing evidence that the patient is in need of continued hospitalization. Raimondo himself admits that in cases of this type the burden of proof is often dispositive because of the difficulty of proving mental capacity or incapacity. Appellant's Br. at 19–20. Forcing the State to prove its case by clear and convincing evidence in order to successfully challenge the superintendent's decision to release a patient is thus even less of a procedural change affecting Raimondo's rights. Finally, Raimondo's other avenues to obtain release have been unaffected or enhanced. Although this would not save a severe restriction of substantive rights, *Weaver v. Grahm*, 450 U.S. 24, 34–36, 101 S.Ct. 960, 967–68, 67 L.Ed.2d 17 (1981), it is indicative that the procedural change involved here is not so far-reaching that it significantly affects substantial personal rights.

■ Raimondo also argues the *ex post facto* clause has been violated because he lost substantial rights he allegedly had under the MHDDC's provisions that govern the release of civil patients who are not former NGRIs. We disagree. As determined by the Illinois courts, Raimondo never had any rights under the MHDDC other than those he now enjoys. Once the MHDDC became effective, Raimondo's confinement fell under those provisions of the MHDDC that the Illinois courts have interpreted as applying the procedures of the UCC to the confinement and release of civilly committed patients like Raimondo who were once NGRIs.

### B.

Raimondo alleges he has been denied due process because he is being held under the newly enacted MHDDC but has never received a hearing under that act. We disagree.

■ The district court correctly found that Raimondo had no right to a new commitment hearing under the MHDDC and received adequate procedural process under the procedures in force at the time of his commitment as an NGRI (the old UCC) and at the time of his subsequent civil commitment (the MHC of 1967). We repeat that court's cogent analysis here.

This court is likewise not persuaded by petitioner's state due process claims, specifically his alleged right under Illinois law not to be confined unless he is found to be "subject to involuntary admission" under the MHDDC. As explained earlier in this opinion, the provisions under the MHDDC governing initial commitment are not applicable to petitioner; petitioner was initially committed pursuant to the statute in effect at the time of his

an analogous provision, he has lost an opportunity for periodic review and potential release. We simply cannot read this provision as giving Raimondo anything other than the right to careful, thorough, on-going care and the right to be informed of his condition, rights which Raimondo clearly still enjoys under the MHDDC.

When the Illinois legislature wanted to give civil patients opportunity to challenge their confinement, they knew how to do so as evidenced in the carefully crafted procedures for confinement and release found in the MHC and MHDDC. We decline to usurp their prerogative by creating more such opportunities.

acquittal. Any liberty interest acquired under that statute was constitutionally protected by the separate determination of insanity following the verdict that was necessary for an order of commitment. Ill.Rev.Stat., 1975, ch. 38, § 1005–2–4(a)(b). Nothing in the record suggests that petitioner did not receive a hearing, which resulted in the original order of commitment and a finding that petitioner had not recovered from his insanity at that time. The original commitment order was then treated as an order of admission under the Mental Health Code [of 1967]. Ill.Rev.Stat. 1975, ch. 38, § 1005–2–4(b). Based on the Supreme Court holding in *Jones* [*v. United States*, 463 U.S. 354, 103 S.Ct. 3043 (1983)], the absence of a second hearing on the expiration of petitioner's initial criminal period of commitment does not offend due process.

*Raimondo v. Belletire*, No. 83 C 5410, mem. op. at 10–11 (N.D.Ill. Oct. 30, 1984). We note in addition that the MHDDC explicitly withholds from persons committed as civil patients under the MHC of 1967 the right to a new hearing to determine their need for continued hospitalization. Section 3–904 of the MHDDC states that "[a]ny mentally ill person admitted to a facility or placed in the custody of another person under any prior statute of this State is subject to this Chapter." ILL.REV.STAT. ch. 91½, par. 3–904 (1983).

### C.

 Finally, Raimondo alleges he has been denied equal protection of the laws because he is being treated differently than other civil patients under the MHDDC. Raimondo is being treated the same, however, as all other civil patients who were once NGRIs and thus is not receiving unequal treatment. There is no constitutional offense in treating civil patients who were once NGRIs differently than other civil patients. *Jones v. United States*, 463 U.S. 354, 370, 103 S.Ct. 3043, 3052, 77 L.Ed.2d 694 (1983).

### III.

For the foregoing reasons, the judgment of the district court denying Raimondo's petition for writ of habeas corpus is

AFFIRMED.