Hester S. Meyer, Appellant, v. Arthur Meyer,
Appellee.
Arthur Meyer, Appellee, v. Hester S. Meyer,
Appellant.

Gen. No. 44,004.

452

Opinion filed February 17, 1948. Released for publication March 9, 1948.

TEED & JOHNSON, of Chicago, for appellant; HUGH E. JOHNSON, of Chicago, of counsel.

CANTWELL & CANTWELL and BROWN, FOX & BLUMBERG, all of Chicago, for appellee; CHARLES LEROY BROWN, ROBERT E. CANTWELL, JR., YAGER CANTWELL and JOSEPH W. BAER, all of Chicago, of counsel.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court.

December 28, 1942, the plaintiff, Hester S. Meyer, filed a complaint in the circuit court of Cook county

against her husband, Arthur Meyer, for divorce on the ground of desertion, seeking the care and custody of their two minor children. Three days later defendant, without service of process, filed a formal answer, admitting substantially all the allegations of the complaint, except the charge that he had deserted her and the assertion that plaintiff had at all times conducted herself in a manner becoming a good, true and affectionate wife. At the same time he also filed a counterclaim, charging his wife with wilful desertion on November 1, 1941, and asked that a decree for divorce be entered in his favor and that he be awarded the care and custody of the minor children. Plaintiff's answer to the counterclaim denied his allegations with respect to the desertion and asked that the counterclaim be dismissed for want of equity. A stipulation was then entered into by counsel for the respective parties that the matter be set for immediate hearing and the cause proceeded to trial on January 11, 1943, some fourteen days after the complaint was filed. Mrs. Meyer was represented by counsel but was not present at the hearing, being then confined as a patient at the North Shore Health Resort in Winnetka, Cook county, Illinois. Defendant testified that his wife had deserted him on November 1, 1941, without cause, and two other witnesses stated in corroboration of his testimony that the parties had been living separate and apart since that date and that in their opinion Mr. Meyer was a fit and proper person to have the care and custody of the children. At the conclusion of the hearing JUDGE LYNCH, who heard the cause, indicated that a decree would be entered on defendant's counterclaim awarding custody of the children to defendant, and after the testimony was written up and submitted to him a decree for divorce was entered on January 18, 1943.

Thereafter, in July 1944, plaintiff filed a petition in the circuit court collaterally attacking the decree on the ground that the court lacked jurisdiction of the subject matter, thus rendering the decree void, and ask-

ing that it be expunged of record. Defendant moved to dismiss the petition for the following reasons: "1. Plaintiff was competently represented by counsel fully advised of the facts and circumstances in connection therewith. 2. The decree for divorce herein was a consent decree. 3. Plaintiff has accepted the benefits of said decree." The court denied the motion to strike and ordered defendant to answer. He filed an answer denying the allegations touching upon the question of jurisdiction and averred that plaintiff was a resident of Cook county when the complaint was filed by her counsel. Hearing on the petition and answer by JUDGE FEINBERG resulted in the allowance of defendant's motion to dismiss the petition for want of equity, from which Mrs. Meyer appealed. We reversed that order and remanded the cause for a new trial with specific directions. The essential facts pertaining to the litigation and the questions involved are amply set forth in our former opinion which is fully reported in *Meyer v. Meyer,* 328 Ill. App. 408. We there stated explicitly that "The only question presented is whether plaintiff made out a prima facie case on the proposition that the decree of divorce was null and void for want of jurisdiction, her position being that neither of the parties was a resident of Cook County at the time the divorce proceeding was instituted, as required by statute (Ill. Rev. Stat. 1941, Divorce, ch. 40, par. 6 [Jones Ill. Stats. Ann. 109.173])," but because the chancellor had not decided the question of residence but had directed the inquiry primarily to Mrs. Meyer's mental condition and her ability to understand the nature of the proceeding, and because we thought that "an orderly hearing of plaintiff's petition challenging the jurisdiction of the court, and defendant's answer thereto, was never had," we reversed the order from which plaintiff had appealed and remanded the cause for the purpose of affording the parties "an opportunity to adduce the competent evidence avail-

able and to have the controversy [the question of jurisdiction]. determined upon the issues made up by the pleadings.'' Questions of law urged upon the first appeal were all fully discussed and determined, and in our opinion on rehearing we expressed ourselves as adhering ''to our conception of the law relating to the question of jurisdiction and plaintiff's right to challenge it,'' as set forth in our original opinion, before rehearing.

On the first appeal defendant presented only two points in support of the order of dismissal. He first argued that ''the divorce decree herein is not null and void because the court had jurisdiction of the parties and the subject matter.'' He posed the question presented to the court as follows: ''Where a wife domiciled in Kane County, Illinois, comes to a Cook County Sanitarium to stay for an indefinite period of time to cure herself of alcoholism, will her presence within Cook County for two months prior to filing her complaint for divorce be sufficient to make her a resident within the meaning of Chapter 40, Paragraph 6 of the Illinois Revised Statutes?'' We discussed plaintiff's citations bearing upon that question and *Way v. Way*, 64 Ill. 406, the only case relied upon by defendant, and concluded that ''it would be idle in this proceeding to argue that Mrs. Meyer had any intention of establishing a residence in Cook county within the contemplation of the statute, any more than it could be urged that she intended to become a resident of the State of Wisconsin while confined in the sanitarium at Wauwatosa for nine or ten months prior to her admission to the North Shore Health Resort.''

The only other point presented and argued by defendant on the first appeal was as follows: ''assuming that the divorce decree herein is null and void, equity will not permit the plaintiff to raise the question of jurisdiction'' because ''A. plaintiff has accepted benefits under the divorce decree herein,'' and ''B. plain-

tiff by filing suit and by waiting a year and a half before attacking the divorce decree has authorized and ratified said decree." We discussed both of these propositions fully and decided them adversely to defendant.

Pursuant to remandment the case was assigned to JUDGE SCHNACKENBERG. It appears that after the entry of the original decree defendant was married to Constance Arts on May 1, 1943, and that as a result of that marriage a child, Katina, was born June 9, 1945. Constance Arts Meyer and her daughter, Katina, sought to file their intervening petition in the second hearing, but the chancellor denied their motion and the cause proceeded upon the *original petition* and *defendant's answer* thereto. More than 700 pages of evidence were adduced upon this hearing, and presumably every item of evidence that could have any possible bearing upon the residence of plaintiff in Cook county prior to the filing of her original complaint and the resulting jurisdictional question involved, was brought into the case. Much of the evidence was objected to by plaintiff and had little if any bearing upon the sole issue for which the cause had been remanded. At the conclusion of this hearing the chancellor announced that "On mandate of the Appellate Court, there has been a complete hearing on the petition of the plaintiff, Hester Sheldon Meyer, and the answer of the defendant, Arthur Meyer, thereto." The contention that "plaintiff has accepted benefits under the divorce decree" was abandoned on the second hearing and is not urged on this appeal. The chancellor, having in mind defendant's remaining contention as to estoppel, addressed the following interrogatory to Mr. Cantwell, defendant's attorney: "Have you any case where the question of residence as being jurisdictional was raised by a petition and as part of that petition it is urged that estoppel operates against the petitioner there or the attack is on jurisdictional grounds and non-

residence in the County, as distinguished from the case where the attack is merely on the ground of fraud in procuring a decree?'', to which Mr. Cantwell replied: ''The *Whittaker* case [151 Ill. 266], Judge, in Illinois.'' The chancellor stated that he was familiar with the *Whittaker* case, and pointed out that ''In that case they found the party did live in the state, in the County,'' and then asked Mr. Cantwell the further question: ''In other words, can you find a case where the jurisdiction of the court is attacked because of the non-residence of the plaintiff in the county when the suit was filed and a petition to vacate on that ground was denied because of laches or equitable estoppel?'', to which Mr. Cantwell replied: ''I can't find one in Illinois, Judge.'' The chancellor then said: ''That's this case,'' thereby implicitly holding against defendant's contention that laches or equitable estoppel could be urged in a case where the court lacked jurisdiction of the subject matter because of plaintiff's nonresidence in the county in which the complaint was filed. However, he expressed himself as being bound to consider the court's duty in reference to defendant's second marriage and because, as he indicated, ''the vacation of this decree would work disadvantageously to Constance Arts Meyer, and certainly cast a shadow over the legal status of the child of the second marriage,'' he dismissed the petition for want of equity on that ground, and said that it was unnecessary to go further into a discussion of the evidence pertaining to the question of jurisdiction.

As the case comes back on this second appeal, the question of residence has still not been decided. Although the order at the conclusion of the opinion contained no specific directions, the context of the opinion left no doubt whatsoever that the further proceedings contemplated on the second hearing were to be confined to the question whether plaintiff was a resident of Cook county immediately prior to

and at the time the complaint was filed. Under the established rule in this State, "If no specific directions are given it must be determined from the nature of the case what further proceedings will be proper and not inconsistent with the opinion." *Roggenbuck v. Breuhaus,* 330 Ill. 294. See also *People v. Lord,* 315 Ill. 603. Aside from the factual question of jurisdiction, the only other points urged by defendant on the first appeal, as heretofore indicated, were questions of law which we discussed and decided adversely to defendant. "Questions of law decided on appeal will not again be considered. They are binding on the trial court, also on the Appellate Court in any subsequent appeal." *People v. Militzer,* 301 Ill. 284. In the recent case of *People v. DeBoice,* 377 Ill. 634, the court said that "Mandates of this court are not to be treated lightly but are to be obeyed. They are the law of the case."

In reply to the foregoing rule and supporting authorities defendant advances the proposition and cites cases to the effect that "When a judgment is reversed and a case remanded for a new trial, and the state of the evidence on the second trial is different, the observations of the reviewing court on the first appeal as to the effect of the evidence are not relevant to a determination of the legal effect of the evidence on the subsequent hearing." We would have no quarrel with this proposition if the cause had been remanded for an unrestricted new trial, but as we have already indicated, although the remanding order was general, there remained in the case only the factual question whether Mrs. Meyer was a resident of Cook county when the complaint was filed. As a matter of fact, in our original opinion, before rehearing, we had reached the conclusion that the chancellor should have granted plaintiff's petition to expunge the decree and because of his failure so to do, we reversed the order from which the appeal was taken and remanded the cause

with directions that an appropriate order be entered in harmony with the views expressed. It was only after defendant filed a petition for rehearing and felt aggrieved because we had remanded the cause with directions to expunge the decree *"without giving the defendant a chance to be heard,"* that we remanded the cause with directions heretofore indicated. From the voluminous record now before us we are unable to discern one iota of evidence on the second trial that would in any way overcome or counteract the conclusion that both parties actually resided in Geneva, Kane county, Illinois; that upon the insistence of Mrs. Meyer's husband and with the consent of her mother, who had apprehensions about allowing her to remain in the home with Mr. Meyer, plaintiff was brought to the North Shore Health Resort on October 29, 1942, for the sole and only purpose of being treated for alcoholism; that she had no home other than the one in Geneva, Kane county; that all her personal effects and belongings were contained in the Geneva residence; and that her stay "for an indefinite period," as defendant phrases it, at the North Shore Health Resort, and her mere presence within Cook county for the two months during which she was receiving treatment there, could not by any stretch of the imagination make her a resident within the meaning of the statute. We discussed the law on that subject quite fully in our opinion and cited cases showing that "The authorities in this State are in accord that in order to establish a new residence, a person must abandon a former one and take up a new residence with an *animus manendi*. Something more than a mere existence in the county is required (*Way v. Way, supra*); and where an actual *bona fide* residence is lacking, the court cannot acquire jurisdiction of the subject matter, and the proceedings are void," citing *Dean v. Dean*, 381 Ill. 514; *Horix v. Horix*, 256 Ill. App. 436; and *In re Estate of Goldberg*, 288 Ill. App. 203.

■ ■ On this appeal defendant has retained additional counsel who, together with his former attorneys, have all but abandoned the contentions made on the prior appeal, except as to estoppel, and have shifted their method of attack by advancing new legal propositions in support of the order dismissing plaintiff's petition. Only incidentally do they now contend that the evidence introduced on the second trial adequately establishes that "plaintiff at the time of the commencement of this suit was a resident of Cook county." An examination of the evidence on retrial as to residence shows it to be almost identical with the evidence on the first trial and adds nothing to the absurd contention that Mrs. Meyer, who was brought to the North Shore Health Resort in Cook county after slashing her wrists in protest against going there and who was confined to the psychopathic ward of the hospital for the first thirteen days of her presence there, ever formed or had any intention of becoming a resident of Cook county. Since the cause was remanded for the specific purpose of introducing such further testimony as defendant had touching upon the question of plaintiff's residence in Cook county and for no other purpose, we would be justified in deciding the case upon that issue as presented upon the record. The law is well settled that a party cannot try a case on one theory in the trial court and advance a new and entirely different theory for the first time in the reviewing court. As was said in *Henry v. Metz,* 382 Ill. 297, "Parties cannot blow hot and cold in a lawsuit," and in *Kellner v. Schmidt,* 328 Ill. 426, "After there has been a ruling of an appellate court upon one branch of a case, one of the parties who has been successful in the trial court cannot change his position and ask for a judgment inconsistent with the theory upon which he has prosecuted or defended the action. (*Stevenson v. Stevenson,* 297 Ill. 338; *Leigh v. National Hollow Brake-Beam Co.,* 224 id. 76) . . . This rule re-

quiring consistency of action before the courts is not an arbitrary rule but one demanded by the very object of courts of justice,'' and again in *Chicago Title & Trust Co. v. DeLasaux*, 336 Ill. 522, ''It is not alleged in her answer that the court was without jurisdiction to determine the issue between Harsh and plaintiff in error. A party cannot try a case on one theory in the trial court and on another theory in a court of review.'' However, the additional counsel have, with great earnestness, devoted so much space in their brief to these new propositions and devoted so much of their oral argument thereto, that we are impelled to pass upon them.

The principal ground now urged in support of the order dismissing the petition is that ''A court of equity has no jurisdiction to set aside its final decree, on a petition presented more than thirty days after the rendition of that final decree, and based on grounds not appearing on the face of the record in the case in which the decree was rendered.'' Counsel argue that the record, consisting of the complaint, defendant's answer, his counterclaim and plaintiff's answer thereto, all allege the necessary jurisdictional facts and that the decree found that the court had jurisdiction of the parties and subject matter, that plaintiff had resided in Illinois for more than one year preceding the filing of suit and was a resident of Cook county, and therefore, they say, the attack upon the decree was not based upon any infirmity shown in the record. Specifically, they rely on *Cullen v. Stevens*, 389 Ill. 35, approving the rule for which defendant now contends, and holding that the certificate of evidence is not a part of the ''record''; and counsel say that since the collateral attack is not based upon any infirmities or defects appearing on the face of the record, the court had no alternative except to dismiss the petition. By the introduction of voluminous testimony of counsel who represented plaintiff before the complaint was

lodged in Cook county, as well as letters that passed between them and conversations of both counsel with defendant, who was also a lawyer, defendant has invited search into the extended negotiations that preceded the filing of the complaint, and to the doubt that evidently existed in their minds as to whether it ought to be filed in this jurisdiction, in the city court of Chicago Heights or in Kane county, where it belonged. It is obvious that the sole purpose of filing it here was to give the court colorable jurisdiction so as to enable defendant, who admittedly resided in Kane county, to lodge his counterclaim and obtain the divorce he sought in this jurisdiction. This is indicated by the complaint itself, a flimsy document, unverified, seeking neither alimony, support for the children or attorneys' fees, and silent as to the existing agreement for settlement of property rights, and from the speed with which defendant appeared and filed his counterclaim without waiting for the service of summons, all indicating a plan to conclude the case with the greatest possible dispatch. Moreover, we doubt whether the so-called regularity of the record on its face would support the decree. In neither the complaint nor counterclaim was there an unqualified allegation in conformity with the statutory requirement that plaintiff was a resident of Cook county. Neither document alleged that plaintiff was a resident immediately preceding the filing of suit; they merely alleged that plaintiff is "now" an actual resident of Cook county, and the decree made the same finding. It is conceivable that a plaintiff may have become a resident when the decree was entered, even though he or she did not reside in the jurisdiction when suit was filed. A faulty charge and finding could well invalidate the decree.

█ █ However, in the view we take, defendant is precluded for other cogent reasons from urging at this state of the litigation that a collateral attack upon the decree, not based on any infirmities or defects ap-

pearing on the face of the record, cannot be maintained. Defendant could have interposed the instant contention when he first moved to strike plaintiff's petition and thereby have given the court an opportunity to pass upon it, but he did not do so. None of the three points specified in support of his motion to strike are even remotely related to the contention now made, and when the court overruled the motion to strike he abided by the order, answered, and went to trial. He again failed to raise the point after remandment and elected to abide trial upon the issue of plaintiff's residence. The rule, as we understand it, is not that a judgment which is void will be enforced as if it were valid, but that it cannot be shown to be invalid except in certain ways, and there is ample authority to support this proposition. In *Texas Pacific Coal & Oil Co. v. Ames* (Texas), 284 S. W. 315, a judgment was set aside on collateral attack, and in affirming that order the reviewing court said: "There is a rule, though not urged by appellees, whereby the judgment of the trial court may be sustained. This is stated in Freeman on Judgments (5th Ed.) p. 788, § 375a, as follows: 'The public policy underlying the doctrine of collateral attack is not such as to prevent the interested parties from waiving the protection of the rule limiting collateral inquiries to the face of the record. The rule is not that a judgment which is void will be enforced as if it were valid, but that it cannot be shown to be void except in certain ways. And if the parties . . . stipulate, *or fail to object to the evidence of, the facts showing lack of jurisdiction,* it is then established that the judgment is void as effectively as though shown by the record, and *whenever such fact is brought to the attention of the court, it is the duty of the court to so declare as a matter of law.'*" (Italics ours.) In *Akley v. Bassett,* 189 Cal. 625, 209 Pac. 576, where a collateral attack was made upon a judgment, the court said: "We dismiss appellant's objec-

tion that respondent may not attack a judgment, regular on its face, by citing the former decisions of this court to the effect that the rule is not that a judgment, which is void, will be enforced as if it were valid, but that it cannot be shown to be void except in certain ways. But if the parties admit the facts which show that the judgment is void, or if they are established without opposition, then, as a question of law upon such facts, we do not see why the case is not like that where the judgment is void upon its face. *Hill v. City Cab, etc., Co.* [79 Cal. 188, 21 Pac. 728]; *People v. Harrison,* 107 Cal. 541, 546, 40 Pac. 956; *Lake v. Bonynge,* 161 Cal. 120, 133, 118 Pac. 535.'' In *Rogers v. National Surety Co.,* 53 Idaho 128, 22 P. (2d) 141, the court said: ''On collateral attack the invalidity of the judgment must ordinarily appear on the face of the judgment roll. *Weil v. Defenbach,* [36 Idaho 37, 208 P. 1025]; *Welch v. Morris,* 49 Idaho 781, 291 P. 1048, 1049. In the last-named case the court used the following language: 'We say ''ordinarily,'' because there appears to be a well-recognized exception to the effect that where the parties admit facts which show that a judgment in a former suit is void, or, if such facts are established without objection, then the case is similar to one wherein the judgment is void upon its face and is subject to attack.' '' The foregoing rule is stated, with supporting authorities, in 49 C. J. S. Judgments § 421: ''By the weight of authority, in order that a judgment may be collaterally attacked, such want of jurisdiction must affirmatively appear on the face of the record, and generally cannot be established by extrinsic evidence, although there are decisions to the contrary. . . . Even though a judgment is valid on its face, if the parties admit facts which show that it is void, or if such facts are established *without objection,* the case is similar to one wherein the judgment is void on its face and is subject to collateral attack.'' (Italics ours.) *Cullen v.*

*Stevens, supra,* upon which defendant chiefly relies, affirms the law in this State that a judgment may be collaterally attacked only where the want of jurisdiction affirmatively appears on the face of the record and decides that the certificate of evidence is not part of the record. There is nothing in that case, however, which runs counter to the logic of the rule stated in Freeman on Judgments and the foregoing citations supporting it, nor do we find any decisions in Illinois holding otherwise. It is a fundamental legal principle that parties may waive substantive rules of law, statutes and even constitutional provisions enacted for their benefit. Trial by jury may be waived in criminal cases, and in *People v. Terrill,* 362 Ill. 61, the court said: "We have repeatedly held that if such a case [one involving constitutional questions] is taken to the Appellate Court and errors are assigned of which that court has jurisdiction, the party taking the appeal or suing out the writ of error is held to have waived the constitutional questions." See also *People v. Rosenthal,* 370 Ill. 244. "This eliminates from consideration the constitutional questions raised by plaintiff in error." *People v. Billow,* 377 Ill. 236, 239. We perceive no reason why a party who might otherwise defend the validity of a decree in his favor where an attack is made upon it by a timely objection to the method of attack employed, cannot waive the rule by failing to object to the trial of the issue of jurisdiction.

What has been said in discussing the foregoing proposition applies with equal force to the contention that a collateral attack cannot be made on a decree by petition after the expiration of 30 days, and that an original proceeding such as a bill of review or a bill in the nature of a bill of review to impeach the decree for fraud is required. Moreover, there are numerous decisions in this State where an attack on a decree more than 30 days after its entry in the original proceeding by petition has been sustained. In

*Howard v. Howard,* 304 Ill. App. 637, defendant by verified motion sought to vacate a decree of divorce which had been entered more than 60 days prior thereto. Plaintiff, in whose favor the decree had been entered, moved to strike the motion but was overruled. The court then heard evidence and entered an order vacating the decree. It was held on appeal that no error was committed in vacating the decree more than 60 days after its entry, and the order was affirmed. In *Barnard v. Michael,* 392 Ill. 130, the court first stated the general rule that a judgment or decree cannot be set aside by the court in which it was entered after the expiration of 30 days, and then stated the exception to that rule to be "that a court may entertain an application to vacate its void judgments or orders at any time and the thirty-day limitation does not apply. A judgment, order or decree entered by a court which lacks jurisdiction of the parties or of the subject matter, or which lacks the inherent power to make or enter the particular order involved, is void, and may be attacked at any time or in any court, either directly or collaterally." Again, in *Sim v. Sim,* 247 Ill. App. 321, it was held to be "hardly necessary to cite decisions holding that, if the term of court at which a decree is regularly entered has elapsed, the court is without power at a subsequent term, on motion or petition, to vacate or modify said decree in any manner except as to matters of form or clerical errors and except where a decree is void for want of jurisdiction in the court entering the same. . . . The exception which permits a court to vacate a prior order contemplates a case where the court had no jurisdiction of the subject matter or of the parties." See also *Riddlesbarger v. Riddlesbarger,* 324 Ill. App. 176, where the method of attacking jurisdiction for want of subject matter is fully discussed and numerous decisions cited.

As a third proposition it is urged that section 5 (par. 6) of the Divorce Act is merely a venue section

and as such compliance therewith is not a jurisdictional requirement. In support of this theory defendant cities *McFarlin v. McFarlin,* 384 Ill. 428, and *Cullen v. Stevens,* 389 Ill. 35, and argues that in those cases the Supreme Court departed from and repudiated the rule laid down in *Way v. Way,* 64 Ill. 406; *Dean v. Dean,* 381 Ill. 514; *Horix v. Horix,* 256 Ill. App. 436, and the early case of *Sommers v. Sommers,* 16 Ill. App. 77. The *McFarlin* case adheres to the rule announced in the *Way, Dean, Horix* and *Sommers* decisions and said that: "By its terms the residence of the plaintiff within the proper subdivision of the State is the factor that controls the venue. The section as it was before the 1939 amendment appeared in the laws of 1845. (Ill. Rev. Stat. 1845, p. 197.) In that form it was before this court in *Way v. Way,* 64 Ill. 406. It was held that this section was mandatory. It was said: 'The language is imperative, and excludes the right to commence proceedings in any other county, than the one in which the residence of the complainant is fixed. Residence is made a prerequisite to the existence of the right to file the bill.' Also see *Dean v. Dean,* 381 Ill. 514; *In re Estate of Goldberg,* 288 Ill. App. 203; *Horix v. Horix,* 256 Ill. App. 436; *Sommers v. Sommers,* 16 Ill. App. 77. The amendment would not change this rule but, if valid, would have the effect of extending the availability of city courts in divorce matters to persons residing outside the city limits of the city but within the county in which the court was located." The mandatory rule that the suit shall be brought in the county where the plaintiff resides is confirmed in *Cullen v. Stevens,* 389 Ill. 35, as follows: "That the plaintiff shall reside in the county where the suit is filed, is a prerequisite to the filing of a complaint in a divorce proceeding. (*Dean v. Dean,* 381 Ill. 514.)" No cases are cited by defendant and we know of none which hold that residence of plaintiff in the county where the suit is to be filed is not a prerequisite

to . the right of the court to entertain jurisdiction. Since long before the Civil War it has been the law in this State that where ''jurisdiction over the person, or of the subject matter, does not exist, the judgment is a mere nullity; decides nothing; concludes no one; and may be rejected, when collaterally drawn in question.'' *Buckmaster v. Jackson ex dem. Carlin,* 3 Scammon 104 (1841). In *Swiggart v. Harber,* 4 Scammon 364 (1843), it was held that where the court has jurisdiction of the person of the defendant and the subject matter of the suit, whether its decisions are correct or not its judgment, until reversed, is binding in every other court; but where there .is a total want of jurisdiction in the court, its proceedings are an absolute nullity; they confer no right and afford no protection to those claiming or acting under them, and should be pronounced void when collaterally drawn in question. More recent decisions have approved this rule without exception. *Miller v. Rowan,* 251 Ill. 344; *Barnard v. Michael,* 392 Ill. 130.

Lastly defendant again urges the defense of laches. Illinois decisions are uniformly to the effect that a void judgment or order may be' vacated at any time and that the doctrines of laches and estoppel do not apply. *Thayer v. Village of Downers Grove,* 369 Ill. 334. The most recent pronouncement of this rule is contained in *Ward v. Sampson,* 395 Ill. 353. In that decision the Supreme Court distinguishes between cases that are voidable and those that are void. It was there held that error, no matter how great, will not render the decree void if the court had jurisdiction, but in commenting on void proceedings, the court said: ''Again, a void judgment or order may be vacated at any time and the doctrines of *laches* and estoppel do not apply.'' See also *Ashlock v. Ashlock,* 360 Ill. 115. Even in *Guggenheim v. Guggenheim,* 189 Ill. App. 146, upon which defendant relied on the former appeal, the court held that if Mrs. Guggenheim had proved to the satisfac-

tion of the court that she was not a resident, the proceeding would have been void and there would have been no escape for the court but to grant her the relief sought, but the court found that "This she has not done."

Although neither of the chancellors made a finding on the question of residence, the evidence warrants only the conclusion that plaintiff did not reside in Cook county at the time her divorce complaint was filed and that her temporary presence in a sanitarium as a patient did not give the court jurisdiction to enter the decree of divorce. Presumably the parties have adduced all the evidence that is possible upon this subject, and it would serve no useful purpose to remand the case for a third trial. Therefore, in view of our conclusions as to the legal aspects of the controversy the order of the circuit court entered July 10, 1946, dismissing plaintiff's petition is reversed and the cause is remanded with directions to expunge the decree of divorce and dismiss the cause at defendant's cost.

*Order reversed and cause remanded with directions.*

SCANLAN and SULLIVAN, JJ., concur.